**Federal Kemper
Insurance Co.
v.
Glass**
*[Cite as 4 AOA 230]*

*Case No. 89 C.A. 154
Mahoning County, (7th)
Decided June 6, 1990*

*Michelle A. Smithern, Orville L. Reed III, 50 S. Main Street, P.O. Box 1500, Akron, Ohio 44308, for Plaintiff-Appellant.*

*Daniel L. Rossi, 802-04 Mahoning Bank Bldg., P. O. Box 6018, Youngstown, Ohio 44501, for Defendant-Appellee.*

O'NEILL, P.J.

This cause originated in the trial court when Federal Kemper Insurance Co., the appellant, filed a complaint in declaratory judgment alleging, amongst other things, that Thomas P. Glass, the defendant-appellee, was an insured under a policy of insurance issued by Federal Kemper Insurance Co. The complaint went on to allege that the plaintiff-appellee had made a demand under the policy of insurance which was in effect that he was injured in an accident which occurred on July 25, 1985 that resulted from the negligence of another driver who fled the scene of the accident and whose whereabouts and identity were unknown. Federal Kemper Insurance Co. went on to allege that there was a dispute about the issue of whether there was another vehicle involved in the accident and whether there was physical contact between the two vehicles. Pursuant to the terms of the policy, absent physical contact between the defendant-appellee's vehicle and another vehicle, there would be no coverage under the uninsured provisions of the policy of insurance.

The complaint came on for trial and, following the close of evidence, the trial judge issued a judgment entry which found that there had been contact between the appellee's vehicle and an unidentified other vehicle. In conclusion, the trial judge found that it was incumbent upon the plaintiff-appellant to afford coverage to the defendant-appellee under the policy of insurance.

The first assignment of error contends that the trial court erred by basing its finding and judgment upon the testimony of a witness which is positively contradicted by the established physical facts.

The witness alluded to under this assignment of error was the defendant-appellee, who testified that there had been contact between the left front of his truck and a portion of an oncoming motor vehicle. The appellant argues that this contention by the defendant-appellee is totally contradicted as established physical facts. The "physical fact rule" is found in the syllabus of *McDonald* v. *Ford Motor Co.* (1975), 42 Ohio St. 2d 8, which states, as follows:

"The testimony of witnesses which is positively contradicted by the established physical facts is of no probative value and a jury will not be permitted to rest a verdict thereon."

As we previously set forth, it was the testimony of the defendant-appellee that his vehicle had been contacted by an oncoming vehicle and the accident resulted. Appellant contends that this testimony is positively contradicted because of the testimony of two witnesses. John Morgan, a trooper with the Ohio State Highway Patrol, had been called as a witness by the appellant. Mr. Morgan had investigated the subject accident and, during direct examination, the following dialogue took place:

"Q. Oakay. What sorts of things by way of physical evidence do you use in an effort to ascertain the point of impact?

"A. Many times the vehicles are locked together and you can obviously see the point, approximate point of impact, and other times there may be what we refer to as gouge marks or indentations in the pavement that would indicate that was where the point of impact had occurred, and I didn't see anything in this particular accident that would indicate that." (Tr. 12).

Trooper Morgan's testimony was, at best, contradictory. At one point, during cross-examination, he was asked whether his idea of giving an opinion as to whether another car was involved or not was, at best, a little speculative. He responded to that by saying "Right" (Tr. 21). In summation of his testimony, Trooper Morgan stated:

"I had no physical evidence to prove that there was another vehicle involved, and that is the reason why there was none listed on the report." (Tr. 15).

Trooper Morgan went on to admit that at no point during his investigation did he interview the defendant-appellee (Tr. 17), and that his opinion was based totally on his physical observations (Tr. 17). The trooper was cross-examined by reference to a statement which he had furnished to a Mr. Thomas Seymour on behalf of the plaintiff-appellant. Trooper Morgan stated that it was not his awareness at the time the statement was made that it was being recorded (Tr. 18). It was brought to Trooper Morgan's attention that he was asked, by Mr. Seymour, if he investigated this accident as to the possibility of a hit-skip and

he allegedly answered "Yes, I did". This is contradictory to his prior testimony at trial. He was asked whether he checked for damage on the vehicle on the left front, which is where the damage would be and his answer was "We didn't see any". At trial, Trooper Morgan had previously, under direct examination, testified that the truck was on its right side it came to rest. On cross-examination, the trooper was shown photographs taken at the scene and it was brought to his attention that, as a matter of fact, the truck was on its left side (Tr. 19). As to point of impact, the trooper was further asked:

"Q. Now, if there was a glancing blow between two vehicles, would it necessarily leave debris?

"A. It's hard to say.

"Q. And if the blow were to a tire, for instance, would it leave any debris?

"A. Not necessarily." (Tr. 22).

Reasonably, it cannot be concluded that the testimony of Trooper Morgan positively contradicted the testimony of the defendant-appellee.

In furtherance of their physical fact argument, the appellant called, as a witness, Dr. David Uhrich, and established him as an accident reconstruction expert. There apparently was some question as to a hubcap which was located at or near the scene of the accident. Dr. Uhrich admitted that his investigation was based in total on statements and expressions gathered from other persons. In reference to the hubcap and its connection to the accident, Dr. Uhrich stated:

"Well, there was apparently a hubcap that was found, and it was found, according to what I was told, 45 feet west of the west edge of the road and 30 feet north of where the Glass truck ended up; * * *." (Tr. 39).

Based upon his expertise and the foregoing information, Dr. Uhrich concluded that the hubcap could have had nothing to do with the accident. His information, upon which he based this opinion, was faulted. The hubcap in question was discovered by Thomas Couche, whose residence is located on the west side of the road from where this accident occurred. Mr. Couche, in reference to the location of the hubcap, stated:

"* * * Well, it was south of where the truck was * * *." (Tr. 78).

The expert went on to state that he ruled out any impact between the defendant-appellee's vehicle and another vehicle because of "a number of possible things that could be left on the roadway" (Tr. 47). The physical facts rule has been stated as:

"* * *'the testimony of a witness which is opposed to the laws of nature, or which is clearly in conflict with principles established by the laws of science, is of no probative value and a jury is not permitted to rest its verdict thereon.'" *McDonald* v. *Ford Motor Co.* (1975), 42 Ohio St. 2d 8, 12.

The line of evidence in this case is not involved with the law of nature. Certainly, "possibilities" do not establish a clear conflict with principles established by the laws of science.

Accordingly, we cannot conclude from the testimony of Trooper Morgan and the testimony of Dr. Uhrich that this case is involved with the physical facts rule.

This first assignment of error is found to be without merit.

The second and third assignments of error are argued jointly by the appellant and contend that the trial court erred in determining that the appellee met his burden of proof and goes on to argue that the judgment of the trial court is against the manifest weight of the evidence.

In order to establish and prove his side of the case, it was incumbent that the appellee bring forth credible evidence by a preponderance to establish the fact that his vehicle was struck by another vehicle which left the scene of the accident. The plaintiff-appellee testified that he was driving his truck in a northerly direction along State Route 534 and that he saw another vehicle coming toward him. He went on to testify that this oncoming vehicle was weaving from his lane to its lane. He described the oncoming vehicle as a large passenger automobile. He described the incident of impact as:

"* * * As it got closer, I tried to slow down a little bit. I started -- when it started coming closer to me I tried to pull off to the side of the road, and as soon as I slowed down that's when the car hit the front left tire of my truck, and that's when I went off the side of the road." (Tr. 28-29).

Mr. Glass further stated:

"When I felt the car hit the tire, that's when it jolted. The steering wheel jolted at the same time." (Tr. 135).

He went on to state that that's when his truck went off the road.

Mr. Couche, who lived near the scene of the accident, heard a noise that indicated to him that there had been an accident. He stated that, as he went into his front yard running, he could see the

truck as it was rolling over. It was still moving when he saw it. (Tr. 73). In response to a question as to whether he saw any other vehicle, his answer was:

"You are asking did I see any other vehicle? All right. I do recall that as I was coming down, because I could see the flames coming from the truck by this time. My home is about 260 feet off the road, and I'm back -- I was back probably another 50 yards, so I came around and came down there. Yeah, I do vaguely remember seeing a vehicle which would have been headed south-bound, but I paid no attention to it other than the fact that it had just passed. I couldn't say any-thing about even what it was." (Tr. 73-74).

David Schwingle testified as a witness for the defendant-appellee. He stated that, on the day in question, he was operating a motorcycle south on Route 534 and that he noticed some smoke along the road a couple of miles south of him. Mr. Schwingle stated that he passed a car which was coming north and that that car was stopped in the road about a quarter of a mile north of the scene of the accident. He described the car as being a Lincoln Continental occupied by two women and that they were stopped in the middle of the road. He observed · their facial expressions and described them as being "look of fear on their face." (Tr. 105). Mr. Schwingle arrived at the scene of the accident and helped to extract the defendant-appellee from the burning truck. Mr. Schwingle observed some fresh tire tracks on the berm in the opposite side of the roadway from the truck. He brought these tracks to the attention of an investigating police officer "Because I thought they had something to do with it." (Tr. 100). These tracks were located south of the position of the truck.

The appellant argues, under this assignment of error, that there was, in fact, no competent credible evidence to support the trial court's judgment and that the trial court's judgment was simply against the manifest weight of the evidence. We cannot agree with this argument. Certainly, the trial judge had the right and the duty to afford credibility to the testimony of the defendant-appellee. The trial judge had the opportunity to observe the witness Schwingle and to afford the proper weight and credibility to Mr. Schwingle's testimony. Apparently, the trial judge afforded a great degree of credibility and weight to Mr. Schwingle because of his statement "I'll tell you, I'm sitting and listening to you and I can't help but think that this country would be a lot better off if we had more people like you. I mean it. Thank you." (Tr. 124-125).

The judgment of the trial court is certainly supported by competent credible evidence.

"Judgments supported by some competent, credible evidence going to all the essential ele-ments of the case will not be reversed by a re-viewing court as being against the manifest weight of the evidence." *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279, Syllabus.

*Judgment affirmed.*

DONOFRIO, J., and COX, J., concur.