MESZAR et al., Appellants,

v.

BOWEN IMPLEMENT COMPANY et al., Appellees.

[Cite as *Meszar v. Bowen Implement Co.* (1997), 122 Ohio App.3d 141.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–216.

Decided Aug. 1, 1997.

*Stephen J. Brown,* for appellants.

*David W. Stuckey,* for appellees.

MELVIN L. RESNICK, Presiding Judge.

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas and is based on claims arising from injuries received in a jet ski accident.

In April 1995,[1] appellants, David and Marla Meszar, filed a complaint alleging claims of negligence and loss of consortium against defendant-appellee, Jenna L. Zellner, and a negligent-entrustment claim against Bowen Implement Company. Jenna Zellner answered and filed a counterclaim alleging negligence on the part of David Meszar. Jenna's parents, Donald and Sandra Zellner, intervened in the action and filed a "counterclaim" seeking damages for Meszar's alleged negligence and the recovery of medical expenses incurred as the result of injury to their daughter.

Prior to the trial of the issues in this case, David Meszar filed a motion *in limine* in which he asked the court to preclude any evidence of his alleged blood-alcohol content at the time of his injury or the fact that he consumed beer at any time on the day of the jet ski accident. Appellant argued that the results of the blood-alcohol test taken by the hospital at the time of his admission were invalid because the hospital testing procedure did not comply with Ohio Adm.Code 3701–53–05. He further argued that any opinion of the expert who analyzed these results was improper because (1) the expert never met or tested David Meszar, (2) the expert had no knowledge of the protocol followed in obtaining the blood sample for testing, and (3) the expert did not state that the consumption of alcohol was the proximate cause of the jet ski collision. Meszar concluded that the blood-alcohol test results were irrelevant or, if relevant, highly prejudicial. The trial court denied the motion *in limine*, finding that Meszar's blood-alcohol content was relevant to a finding of negligence under R.C. 1547.11(A)(1) as read in conjunction with R.C. 1547.34.[2]

The following basic facts, both disputed and undisputed, were adduced at the trial on this matter.

Over the Memorial Day weekend in 1994, David Meszar and his wife, Marla, stayed in a trailer, co-owned with William Bryson and his spouse, located at Fort Firelands on Lake Erie.

---

**1.** Actually, the case was transferred, pursuant to a stipulation to proper venue, from the docket of the Wood County Court of Common Pleas to the docket of the Lucas County Court of Common Pleas on this date.

**2.** R.C. 1547.11(A) reads:
 "No person shall operate, be in physical control of any vessel underway, or manipulate any waterskis, aquaplane, or similar device upon the waters in this state if any of the following apply:
 "(1) The person is under the influence of alcohol * * *."
 R.C. 1547.34 provides:
 "Violations of sections 1547.02 to 1547.36 of the Revised Code, which result in injury to persons or damage to property, shall constitute prima-facie evidence of negligence in a civil action."

Bryson testified at trial that on May 29, 1994, he was in the company of Meszar all day. He estimated, without objection, that he and Meszar had five to six twelve-ounce beers during the course of that day. At approximately seven o'clock in the evening, and forty-five minutes to an hour after consuming his last beer, Meszar decided to take a ride on his new jet ski. Meszar testified that he had no experience in operating any other type of watercraft and that he had previously been on a jet ski only four or five times.

Meszar and Bryson rode their jet skis on a Lake Erie bay commonly known as "Lost Lake." The pair practiced doing "doughnuts" approximately three yards from each other. "Doughnuts," as described by Bryson, consist of steering a jet ski in a straight line, then turning the steering wheel as hard as possible so that the jet ski makes a one-hundred-eighty-degree spin in the opposite direction. Nonetheless, neither the direction nor the speed of the watercraft as it comes out of a doughnut is predictable.

According to Bryson, he and Meszar stopped their jet skis for a moment and just sat facing an east/northeast direction. Bryson then started his jet ski and headed north, making a wide turn in order to head south for the docks. He was fifty yards away when he looked back and saw that Meszar was still sitting on his jet ski in the same position. Observing a girl driving a jet ski that would go between his position and that of Meszar, Bryson decided to turn back to warn Meszar. When Bryson next looked toward Meszar, he saw two empty jet skis.

At the same time that Meszar and Bryson began their excursion, Jenna Zellner, then age sixteen, and M. Tyson Obenland began a test drive of a Polaris 750 jet ski owned by Bowen Implement Company. Zellner had at least five years' experience in operating various types of watercraft and had operated jet skis on several occasions. In this particular instance, Zellner drove the jet ski with Obenland riding on the seat behind her. Zellner made her way south through a channel to Lost Lake and then turned and headed toward the west end of the bay. After making a U-turn at the end of the bay, she went back toward the middle.

The couple then observed two men in wet suits, each sitting on his own jet ski. According to Zellner, one jet ski then pulled away to the right doing doughnuts and the other remained in place doing doughnuts. Zellner decided to go between the two jet skis. Zellner admitted that she was confused as to what happened next. Her impression was that the jet ski on the right ran in front of her and she swerved to avoid him, thereby colliding with the left side of Meszar's watercraft. Nevertheless, the only damage to the Meszar jet ski was slightly to the rear but close to the middle on the right side. No sign of damage was found on the Polaris 750. After Zellner was thrown into the water and saw David Meszar

floating face down, she signaled for help to the jet skier on the right, whom she described as being "totally on the other side [of Lost Lake]."

Obenland described the accident as follows. Upon reaching the middle of the bay, he noticed two jet skiers, whom he identified as the same persons involved in the jet ski accident, doing "spin-outs" (doughnuts), playing "chicken" by driving their skis at each other, and splashing water. After he and Zellner made their U-turn and headed east, he saw the same jet skiers again. This time, one of the individuals came by and splashed water on Zellner and Obenland. The men then stopped and sat side by side for about thirty seconds. When Obenland and Zellner decided to return home, the Bryson jet ski was off to their right doing doughnuts or spin-outs. The Meszar jet ski was to their left doing doughnuts. As the Zellner craft approached, the Meszar jet ski shot out of its doughnut to the left and in front of the Zellner jet ski. To avoid being broadsided, Zellner swerved left, and the side of the Zellner jet ski collided with the right side of the Meszar jet ski in a side-to-side collision. On cross-examination, Obenland answered in the affirmative when asked whether she "hit him [Meszar] from the front on the right side."

Meszar was first taken to Magruder Memorial Hospital, where his blood was tested for blood-alcohol content. The test revealed a blood-alcohol content of ninety-eight milligrams per deciliter. Meszar was then taken by life flight to MetroHealth Hospital in Cleveland, where a blood-alcohol test was again performed. The results of this test disclosed an ethanol level of .04 percent.

As a result of the collision, David Meszar received injuries to his right side and right back area. These included a fractured right hip joint (anterior acetabular fracture) and fractured right ribs and right scapula (right shoulder blade).

At trial, John K. Sontich, M.D., an orthopedic surgeon who treated Meszar, stated that all of his injuries were caused by a "force generated from a posterior lateral direction." The doctor defined "posterior lateral" as "to the outside and to the back." With regard to Meszar's hip joint fracture, Sontich opined:

"The only way that you can get an anterior acetabular fracture with consistency is by a force generated from the side, posterior side, in an anterior direction. If it's anterior it's got to be directed from . . . a little bit from the posterior side which blows out the front of the hip socket." (Ellipsis *sic.*)

The defense expert, Robert B. Forney, Jr., a medical toxicologist, testified about the effects of alcohol on an individual's physical senses and mental processes, *e.g.*, vision, balance, and coordination. Forney stated that *all* persons who have a concentration of eighty milligrams of ethanol (beverage alcohol) per deciliter of blood or .08 percent are significantly impaired.

Forney was then asked to provide an opinion, to a reasonable scientific certainty, about David Meszar's blood-alcohol content at the time of the jet ski accident. Forney extrapolated from the times the blood samples were taken to 7:00 p.m. and determined that Meszar's blood-alcohol concentration would have been .07 percent or seventy milligrams per deciliter of blood. He then opined that, at that point, Meszar would have been significantly impaired in his perception, judgment, reaction time, and coordination.

Over appellants' objection, the trial court gave the following jury instruction:

"No person shall operate a vessel on the waters of the State of Ohio if such person is under the influence of alcohol. A violation of this law which results in injury to persons or damage to property shall constitute prima facie evidence of negligence.

"Prima facie evidence is such evidence in a civil case to establish the fact of negligence, if believed by you, unless it is rebutted or the contrary is proved. Prima facie evidence must be considered and weighed by you. After consideration of all the evidence, you may determine, but you are not required to do so, whether the prima-facie evidence alone is sufficient to establish negligence by a preponderance of the evidence."

This instruction encompasses the law as set forth in R.C. 1547.11(A)(1) and 1547.34.

The jury returned verdicts in favor of Jenna Zellner and Bowen Implement Company on the claims of David and Marla Meszar and in favor of Jenna Zellner and her parents on their respective counterclaims. Answers to interrogatories revealed that the percentage of negligence attributed to David Meszar as the proximate cause of the jet ski accident was ninety percent and to Jenna Zellner, ten percent.

The court awarded Jenna L. Zellner $9,000 on her counterclaim and Donald Zellner and Sandra Zellner, $3,204.68 on their claim. Pursuant to the jury verdict, the trial court also dismissed Marla Meszar's loss-of-consortium claim. Finally, the court below dismissed Meszar's negligent-entrustment claim filed against Bowen Implement Company.

Appellants, David and Marla Meszar, appeal this judgment and set forth the following assignments of error:

"Assignment of Error Number One: The trial court erred in overruling plaintiffs' motion in limine to prohibit any reference to alcohol use."

"Assignment of Error Number Two: The trial court erred in permitting defendants' expert to give opinion evidence of plaintiff's alleged blood-alcohol level."

"Assignment of Error Number Three: The trial court erred in permitting defendants' expert to give, over objection, opinion evidence that plaintiff was under the influence of alcohol."

"Assignment of Error Number Four: A jury verdict based on eyewitness testimony which is contradicted by unrefuted medical evidence is against the manifest weight of the evidence and should be reversed."

"Assignment of Error Number Five: The court erred in instructing the jury on the DUI statute."

Because they are interrelated, appellants' first, second, and third assignments of error will be considered together.

First, appellants contend that the trial court erred in failing to preclude all evidence suggesting that David Meszar consumed beverage alcohol on the day of the jet ski accident. Appellants sought preclusion of this evidence by means of a motion *in limine*.

This court does not directly review the rulings on motions *in limine*. A pretrial ruling on such a motion is a preliminary precautionary ruling by a court in anticipation of its ruling on evidentiary issues at trial. *State v. Grubb* (1986), 28 Ohio St.3d 199, 201–202, 28 OBR 285, 287–289, 503 N.E.2d 142, 145–146; *McCabe/Marra Co. v. Dover* (1995), 100 Ohio App.3d 139, 160, 652 N.E.2d 236, 249–250. The denial of a motion *in limine* does not preserve any error for review. *State v. Hill* (1996), 75 Ohio St.3d 195, 202–203, 661 N.E.2d 1068, 1077–1078. Thus, the evidence at issue must be presented at trial, and a proper objection made, in order to preserve the error for appeal. *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph three of the syllabus. By failing to raise the issues advanced in the motion *in limine*, the objecting party waives the right to raise them on appeal. *State v. Grubb*, 28 Ohio St.3d at 203, 28 OBR at 289–290, 503 N.E.2d at 146–147.

In the case at bar, appellants introduced the subject of alcohol consumption during their direct examination of Bryson. Further, they did not object when, on cross-examination, Bryson "guesstimated" that he and Meszar had five to six beers on the day of the accident. Therefore, appellants waived the right to raise the admission of evidence of alcohol consumption as error on appeal.

As to the two blood-alcohol test results, appellants' Exhibit A, a compendium of David Meszar's medical record, contained the Magruder Hospital lab report revealing the .098 blood-alcohol reading and the MetroHealth Hospital result of .04. This exhibit was offered by appellants and admitted into evidence. Further, appellants failed to object when appellees' Exhibit 8, which also contains the .098 percent test result, was admitted into evidence. Consequently, appel-

lants failed to preserve any error in the admission of the documents revealing these test results.

Appellants did object, however, to Dr. Sontich's reference to this MetroHealth blood test result in his testimony. Their objection was based on a lack of foundation, lack of relevance, and the highly prejudicial nature of the evidence. Their objection was overruled.

■■ The court has discretion as to the admission or exclusion of evidence during the course of the trial. *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291, 1298–1299. Nonetheless, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *." Evid.R. 103(A). Assuming, *arguendo*, that the trial court did abuse its discretion in admitting testimony from Sontich in which he stated that the blood test taken at MetroHealth Hospital revealed that Meszar had a blood-alcohol content of .04 percent, we find that appellant, by offering the lab report into evidence, invited that error.

In *State ex rel. Bitter v. Missig* (1995), 72 Ohio St.3d 249, 254, 648 N.E.2d 1355, 1358, the Ohio Supreme Court emphasized that "[u]nder the invited error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." Here, appellants themselves offered evidence of alcohol consumption and the MetroHealth Hospital blood-alcohol test result. Therefore, they cannot now complain that it was error for the trial court to allow Sontich to testify as to that result.

Second, appellants assert that the trial court erred in permitting Forney to give an opinion that David Meszar's blood-alcohol content was .07 percent at the time of the accident. Appellants argue that the blood drawing at Magruder Hospital did not comply with Ohio Adm.Code 3701–53–05 and that no evidence was offered of calibration of the blood-alcohol analyzer. They also contend that hospital protocol was not followed in drawing this blood sample. In addition, they maintain that Forney's opinion is invalid because he lacked personal knowledge of the testing procedures used by Magruder or of the operation of jet skis.

Third, appellants claim that the trial court erred in allowing Forney to give an opinion that David Meszar was under the influence of alcohol at the time of the accident. Appellants' argument is based on the allegedly tainted Magruder Hospital blood-alcohol test, the toxicologist's lack of personal knowledge of David Meszar's tolerance to alcohol and ability to operate a jet ski, and Forney's failure to point to intoxication as the proximate cause of the accident.

We shall first address the alleged improprieties in the testing procedures.

R.C. 1547.11(A)(1) provides that no person shall operate a vessel upon the waters of this state under the influence of alcohol. R.C. 1547.11(A)(2) states that no person shall operate a vessel upon the waters of this state if the person has a concentration of ten hundredths of one percent by weight of alcohol in his blood. In the *criminal prosecution* of a person for a violation of R.C. 1547.11(A)(1) or 1547.11(A)(2), the state is required to analyze the blood in accordance with methods (including licensing) approved by the Director of Health pursuant to R.C. 3701.143. R.C. 1547.11(B). Those methods are found in Ohio Adm.Code 3701–53–05 and include a prohibition against the use of alcohol as an antiseptic and require the use of an anticoagulant. In mandating the use of a specified blood-collection method in certain instances, Ohio Adm.Code 3701–53–05(A) refers to R.C. 1547.11(B).

Our review of the pertinent statute and regulation reveals that the method of blood withdrawal set forth in Ohio Adm.Code 3701–53–05 applies only to criminal prosecutions for violations of R.C. 1547.11. This is a civil case. Therefore, admission of the hospital blood-alcohol test results does not rest on a compliance with these requirements.

With regard to the alleged deviation from hospital protocol, the deviation goes to the weight of the evidence rather than its admissibility. Joan Benya, Chief Medical Technologist at Magruder Hospital, laid the foundation, without objection, for the admission of the blood-alcohol test result into evidence. She testified on the issue of the protocol, that is, standard procedure, followed by the hospital in collecting a blood sample. She also testified, without objection, to the result of the Magruder blood-alcohol test. In an extensive cross-examination, Benya mentioned only one deviation from hospital protocol—the use of an alcohol swab rather than a nonalcohol swab. She further stated, however, the effect of using the alcohol swab is "quite negligible." Additionally, Forney was subjected to a vigorous cross-examination on the effect of a deviation from hospital protocol on his assumptions. Thus, appellants had ample opportunity to impeach the blood-alcohol test result.

At the core of appellants' arguments is the question of whether the admission of Forney's testimony was an abuse of discretion.

Evid.R. 401 defines "relevant evidence" as evidence tending to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Further, pursuant to Evid.R. 403(A), evidence, although relevant, is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

The admission or exclusion of relevant evidence rests within the sound discretion of the trial court, and that court's ruling as to such matters will not be reversed absent an abuse of discretion. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

A blood-alcohol test result is relevant to the issue of comparative negligence. *Bishop v. Munson Transp., Inc.* (1996), 109 Ohio App.3d 573, 578, 672 N.E.2d 749, 752–753. That is, as applied to this case, the Magruder Hospital blood-alcohol test result tends to prove that David Meszar was the proximate cause of his own injury. Thus, that result is admissible into evidence in a civil case in conjunction with expert testimony that explains the significance of the percentage of alcohol found in Meszar's blood. *Parton v. Weilnau* (1959), 169 Ohio St. 145, 151, 8 O.O.2d 134, 137, 158 N.E.2d 719, 724–725; *Cramer v. Detrick* (Nov. 10, 1993), Montgomery App. No. 13583, unreported, 1993 WL 462233; *Konrad v. Robinson* (Sept. 8, 1992), Clermont App. No. CA92–02–015, unreported, 1992 WL 217503.

Forney was qualified as an expert in this field and provided testimony explaining the significance of the blood-alcohol test result and its impact on David Meszar's physical and mental processes at the time of the accident. The expert stated that the basis of his opinions was the blood-alcohol concentration of .098 percent *previously admitted into evidence*. See Evid.R. 703; *Huebner v. Miles* (1993), 92 Ohio App.3d 493, 502, 636 N.E.2d 348, 354. Thus, he was not required to have personal knowledge of the methods by which the blood-alcohol test result was obtained, the operation of jet skis, or David Meszar's ability to operate a jet ski. Again, those items mentioned by appellants go to the weight of the evidence and not its admissibility. Appellants tested the weight of that evidence by questioning Forney, at length, about the effect of blood-drawing methods, Meszar's tolerance to alcohol, the operation of jet skis, and Meszar's ability to operate these watercraft on the toxicologist's opinions.

Moreover, the probative value of the blood-alcohol tests and Forney's testimony is not substantially outweighed by its prejudicial impact. Evid.R. 403(A). Evidence was offered that suggested David Meszar was consuming alcohol on the day of the accident and that he and Bryson operated their jet skis in a reckless and unlawful manner. That is, on this evidence, a jury could reasonably conclude that Meszar operated his jet ski while under the influence of alcohol. See, also,

Ohio Adm.Code 1–501:47–2–15(A).[3] Accordingly, appellants' first, second, and third assignments of error are found not well taken.

In their fourth assignment of error, appellants ask this court, as they asked the common pleas court in their motion for a new trial, to apply the "physical facts rule" in order to completely discount the testimony of M. Tyson Obenland.

Under the "physical facts rule," "the testimony of a witness which is positively contradicted by the physical facts cannot be given probative value by the court." *McDonald v. Ford Motor Co.* (1975), 42 Ohio St.2d 8, 12, 71 O.O.2d 4, 7, 326 N.E.2d 252, 255. In order for testimony to fall under this rule, it must be obviously inconsistent with or contradicted by undisputed physical facts. *Id.* at 13, 71 O.O.2d at 7, 326 N.E.2d at 255.

Throughout the trial of this matter, appellants maintained that David Meszar was sitting on his motionless jet ski when Zellner approached him from the rear and struck him on the right side. Appellants contend that the location of David Meszar's injuries is an undisputed physical fact supporting this assertion. They therefore conclude that Obenland's testimony must be discounted because he stated that the collision was a "right front to right front sideswipe."

We must first observe that appellants' depiction of Obenland's testimony is incorrect. Obenland stated that Zellner was required to swerve left, meaning she would be traveling toward the front of Meszar's jet ski, but he described the accident itself as a *side-to-side* collision. This testimony is not obviously inconsistent with Sontich's testimony. The sides of the jet skis could have made contact at a point a "little posterior" to the middle of the righthand side of Meszar's jet ski. Additionally, there is a complete absence of evidence on the dispositive "physical fact," *i.e.*, exactly how Meszar received his injuries. All of the parties were thrown from the jet skis. Meszar may have been injured on his right posterior side when he fell from his jet ski. Thus, the physical-facts rule is inapplicable to this case, and appellants' fourth assignment of error is found not well taken.

Appellants' fifth assignment of error challenges the propriety of the trial court's jury instruction on R.C. 1547.11(A)(1). Specifically, appellants insist that the evidence at trial does not support the instruction.

---

**3.** Ohio Adm.Code 1501:47–2–15(A) provides that "[w]hen two power-driven vessels are crossing so as to involve risk of collision, the vessel which has the other on its starboard side shall keep out of the way and shall, if the circumstances of the case permit, avoid crossing ahead of the other vessel." Pursuant to this regulation, Meszar was required to avoid crossing in front of Zellner. Evidence was offered which, if believed by the trier of fact, demonstrated that Meszar did not comply with the regulation.

 A court's instructions to the jury should address the actual issues in the case as presented by the evidence and the pleadings. *State v. Guster* (1981), 66 Ohio St.2d 266, 271, 20 O.O.3d 249, 252, 421 N.E.2d ·157, 160–161. The decision to give a particular jury instruction is a matter within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Id.*

 In considering all the evidence before the court, we find that there was sufficient evidence offered in this case to warrant instructions incorporating the law in R.C. 1547.11(A)(1) and 1547.34. Therefore, the common pleas court did not abuse its discretion in giving this instruction to the jury. Appellants' fifth assignment of error is found not well taken.

The judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal.

*Judgment affirmed.*

HANDWORK and SHERCK, JJ., concur.