OPINION
{¶ 1} Appellant, Compact Cars, Inc., d.b.a., Apostolakis Honda, appeals the judgment entry of the Trumbull County Court of Common Pleas, entered in favor of appellee, Jeffrey Urso, after a trial by jury. We affirm.
 {¶ 2} On February 7, 2002, appellee purchased a used 1995 Chevrolet 1500 pick-up truck from appellant. The total cash price of the vehicle was $13,400.01 which *Page 2 
was financed over 47 months for a total payment of $16,274.88. Appellant warranted the truck's engine, axle, and transmission for 30 days or 1,000 miles.
 {¶ 3} The day after appellee purchased the vehicle, he noticed a softball size puddle of oil in his garage after having parked the truck for 12 hours. Appellee testified the engine leaked oil anywhere from the filter adapter, the main seal, the valve cover and the intake manifold. Appellee immediately reported the leak to appellant. Appellant asked appellee to return the vehicle on February 11, 2002. Appellee complied and, on that date, appellant replaced the main seal and oil filter adapter.
 {¶ 4} Appellee retrieved the vehicle and was told to return the truck when an additional part (a serpentine belt) arrived. On February 12, 2002, appellee again noticed a new softball size puddle of oil on his garage floor. Appellee again notified appellant who instructed him to bring the vehicle in on February 18, 2002, after the serpentine belt arrived. Appellee picked up the vehicle on February 22, 2002. After these repairs, appellee testified appellant's parts and sales manager advised him not to return for additional maintenance because appellant was not "putting any more money in the vehicle."
 {¶ 5} The vehicle continued to leak oil and, on March 15, 2002, appellee took the vehicle to Schultz Service Center, a different repair shop, for service. Schultz replaced an intake gasket and gasket set. Subsequently, on March 23, 2002, thirteen days outside the thirty day warranty window, appellee's vehicle lost all power and the engine failed entirely. Appellee decided to purchase a new crate motor from the manufacturer. After the engine replacement, appellee had no additional problems. *Page 3 
Appellee returned to appellant's dealership and asked if they would pay for half of the engine replacement. Appellant declined but offered appellee $500. Appellee refused.
 {¶ 6} On June 30, 2002, appellee filed suit against appellant based upon appellant's failure to repair defects with the truck. Appellee asserted appellant was liable for a breach of an implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Act. Appellant filed its answer denying the allegations on August 30, 2002. On January 5, 2005, appellant filed its motion for summary judgment alleging it did not breach an implied warranty of merchantability and, even if it did, appellee was not entitled to incidental or consequential damages. Appellee subsequently filed his response motion. On March 3, 2005, after considering the motions, the trial court determined there were genuine issues of material fact to be litigated.
 {¶ 7} On March 7, 2005, the matter proceeded to trial. Appellee testified on his own behalf and called appellant's representative, Bill Jobe, to testify regarding appellant's policies and procedures. Jobe indicated appellant acquired the truck from an auction and performed a 40 point inspection prior to selling it to appellee. During the inspection, the following problems were documented: (1) a cracked serpentine belt; (2) oil filter housing had leaks; (3) the vehicle cranked slow; (4) the vehicle stumbled slightly at idle; and (5) the rear wheel cylinder leaked. None of these problems were corrected prior to sale.
 {¶ 8} The only other witness to testify was appellant's witness Joe Och. Mr. Och, an ASE certified technician, testified motor vehicles are not designed to leak oil and if they do, it could cause extensive damage. He further testified that a substantial leak could cause engine failure. *Page 4 
 {¶ 9} After deliberations, the jury returned a unanimous verdict in appellee's favor and awarded damages in the amount of $3,500. On March 11, 2005, the trial court entered judgment on the verdict. Appellant now appeals and asserts four assignments of error. Under its first assignment of error, appellant asserts:
 {¶ 10} "The [trial] court erred in instructing the jury regarding breach of implied warranty of merchantability by instructing the jury on Ohio's Lemon Law which is applicable to new vehicles and is not applicable to the used vehicle at issue in this case."
 {¶ 11} A trial court is required to charge the jury with instructions that are an accurate and complete statement of the applicable law.Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12. However, the trial court is not bound to provide jury instructions in the language proposed by the parties even where those instructions espouse the correct legal principles at issue in the case. Henderson v. Spring Run Allotment
(1994), 99 Ohio App.3d 633, 638. Instead, the court possesses the discretion to use its own language to communicate the same principles in language it deems proper. Id. Absent an abuse of discretion, this court must affirm the trial court's jury instructions where the law is accurately stated. Schuller v. US Steel Corp., 11th Dist. No. 2002-T-0087, 2003-Ohio-5230, at ¶ 21. An abuse of discretion connotes more than an error of law or judgment; rather, it suggests that the lower court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore, 5 Ohio St.3d 217, 219. When applying the foregoing standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.,66 Ohio St.3d 619, 621, 1993-Ohio-122. *Page 5 
 {¶ 12} First, appellant asserts the trial court erred in charging the jury utilizing appellee's proposed jury instructions Nos. 18-21. The record does not reflect that the jury was charged using these specific instructions.[1] Because there is no record of the court charging the jury using appellee's instructions, we shall review the trial court's charge to determine whether it was a correct statement of the law. The court stated:
 {¶ 13} "As to implied warranty, when a merchant sells goods, a warranty is implied that the goods will be merchantable. You will decide whether the goods were merchantable. To be merchantable, the goods must pass without objection, in the trade under the contract description, and be of a fair average quality within the description.
 {¶ 14} "* * *
 {¶ 15} "In this case, there's one implied warranty at issue. The implied warranty of merchantability. An implied warranty arises from the circumstances of the sales and does not require a statement of affirmation or written promise by the seller, an implied warranty of merchantability, applies [sic] that the vehicle is fit for the ordinary purpose for which it was intended to be used. To exclude the implied warranty of merchantability, the language of the contract must mention merchantability. And in the case of a writing, must be conspicuous.
 {¶ 16} "The consumer bears a burden of presenting evidence from which a reasonable inference can be made that a specific problem with the vehicle is due to a *Page 6 
defective part, or in this case, the lack of proper repair which is covered by the warranty. Nothing imposes a higher burden on the consumer to eliminate all possible causes of the problem.
 {¶ 17} "It is not essential that there should be a mathematical demonstration or direct evidence of every essential fact in a case, that the circumstances, to have the effect of establishing an allegation of fact must be such as to make the fact alleged, appear more probable than any other. The fact in issue must be the most natural inference from the facts proven. It is not sufficient if the conclusion must rely wholly upon guess or conjecture."
 {¶ 18} The Magnuson-Moss Warranty Act ("MMWA"), Section 2301, et seq., Title 15, U.S. Code, "governs consumer product warranties, both written and implied." Curl v. Volkswagen of America, Inc., 11th Dist. No. 2004-T-0112, 2005-Ohio-6420, at ¶ 18. The general purpose of the MMWA is to require warrantors to "disclose the terms and conditions of their written warranties relating to certain consumer goods, including used motor vehicles, so that consumers can make informed choices regarding the purchase of such goods." Lawhorn v. Joseph Toyota, Inc. (2001),141 Ohio App.3d 153, 155. U.S.C. Section 2310(d)(1) provides "* * * a consumer who is damaged by the failure of a * * * warrantor * * * to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief * * *."
 {¶ 19} In the instant matter, appellee asserted a breach of an implied warranty of merchantability. R.C. 1302.27(A) implies a warranty that goods sold must be *Page 7 
merchantable. That is, all goods must be "fit for the ordinary purposes for which such goods are used[.]" R.C. 1302.27(B)(3).
 {¶ 20} In McGuire v. American Suzuki Motor Corp., 7th Dist. No. 03CO 40, 2004-Ohio-6799, the Seventh Appellate District recently clarified the general means by which a claimant might prove a breach of an implied warranty of merchantability under the MMWA. In McGuire, the plaintiff purchased a new off-road motorcycle on May 12, 2000. The bike came with a six month written manufacturer's warranty. Less than a week before the warranty expired, the plaintiff took the bike to the dealership complaining about the shocks feeling "loose and heavy;" the plaintiff also complained that the bike was making a "motor noise," what he described as a ticking noise in the cam area. Although the plaintiff was unable to state for certain what was causing the noise, he believed it was coming from the cam chain tensioner. The employee of the dealership indicated the noise "wasn't major."
 {¶ 21} On February 7, 2001, after the warranty expired, the plaintiff took the bike back to the dealership for service, complaining that it was leaking oil and the noise had become louder. The dealership made repairs (at no cost to the plaintiff) and returned the bike. On April 18, 2001, the bike's engine was still making noise in the same area and eventually stopped operating while the plaintiff was riding it. The bike was returned to the dealership who replaced the gaskets and the cam chain tensioner. On May 31, 2001, the bike again stopped running. As a result, the dealership, kept the bike until July 21, 2001 making repairs. The dealership replaced the entire tip of the engine, which included the cam tensioner. After the bike was returned, the bike "locked up" on *Page 8 
July 31, 2001. The plaintiff returned to the dealership. However, the dealership raised concerns that the bike may have been abused and refused to make additional repairs.
 {¶ 22} The plaintiff brought suit under Ohio's Lemon Law and under the MMWA for breach of implied warranty of merchantability.[2] After a jury trial, the jury entered a verdict in the plaintiffs favor on both claims. However, the trial court subsequently granted the defendant's motion for judgment notwithstanding the verdict. On appeal, the appellate court reinstated the jury verdict. After review of cases from other states, the court identified the basic standards with regard to claims for breach of an implied warranty of merchantability:
 {¶ 23} "`First, it is not necessary to prove the specific defect in the product. * * *
 {¶ 24} "`Second, breach of implied warranty of merchantability may be established by circumstantial evidence. * * *
 {¶ 25} "Third, a malfunction itself, in the absence of abnormal use and reasonable secondary causes, may be sufficient evidence of a defect to make the existence of a defect a question for the jury. * * * Repeated malfunctions particularly have been held sufficient to establish a breach of the implied warranty of merchantability. * * *
 {¶ 26} "`Fourth, expert testimony is not necessary to establish the breach of warranty.'" Id. at ¶¶ 78-81, quoting, A.A.A. Exteriors, Inc. v.Don Mahurin Chevrolet Oldsmobile, Inc. (Ind.App. 1 Dist. 1981), 429 N.E.2d 975, 978. *Page 9 
 {¶ 27} Although the trial court's instructions do not specifically recite these standards, we believe they capture the general thrust of the correct law in this area. The court set forth the definition of an implied warranty of merchantability and recognized appellee could prove its case by circumstantial evidence. The court did not comment on the issue of expert testimony; however, this omission (and the lack of expert testimony in appellee's case-in-chief) sufficiently conveyed that experts are not necessary to prove the breach. Moreover, by stating appellee did not have to eliminate all possible causes of the oil leak, it indicated the mere existence of the problem could be sufficient to prove the breach.
 {¶ 28} We recognize the trial court's charge placed the burden on appellee to put forth evidence from which an inference could be drawn that the defect rendered the vehicle unsuitable for its use. Pursuant toMcGuire, such proof is unnecessary. After all, the issue in a breach of an implied warranty of merchantability case is not whether a specific defect cause the breach, but, rather, whether the seller sold a good that was not fit for the ordinary purpose for which such goods are used. However, we believe the charge adequately guided the jury by suggesting one way appellee could meet his burden, viz. evidence of the continuous oil leak.[3] Thus, this instruction adequately apprised the jury of the correct law because the direct demonstration of a specific defect, here, a continual oil leak, may be one way in which the buyer might establish a seller sold goods that were not merchantable. We therefore hold the trial court's statement of the law was neither arbitrary nor unreasonable. *Page 10 
 {¶ 29} That said, appellant asserts the trial court should have utilized its proposed instruction pertaining to appellee's burden rather than the instruction charged. Appellant's proposed instruction would require appellee to prove, by a preponderance of the evidence that "(1) there was, in fact, a defect in [the] product sold by the Defendant; (2) such defend [sic] existed at the time such product left the hands of the Defendant; and (3) the defect was the direct and proximate cause of the Plaintiff's injuries or loss." The foregoing statement was set forth in the Supreme Court of Ohio's case McDonald v. Ford Motor Co. (1975),42 Ohio St.2d 8 and appellant asserts it remains "the law of the land" in cases relating to claims for breaches of implied warranties of merchantability. We disagree.
 {¶ 30} The foregoing standard is an accurate statement of the law pertaining to warranty claims in product liability actions. A product liability action, however, "is a form of strict liability in tort." Id. at 10; see, also, Lonzrick v. Republic Steel Corp (1966),6 Ohio St.2d 227; State Auto Mutual Ins. Co. v. Chrysler Corp. (1973),36 Ohio St.2d 151, at paragraph two of the syllabus; State Farm Fire Casualty Co. v.Chrysler Corp. (1988), 37 Ohio St.3d 1, 6; Gibson v. Paul's Bldg.Supply, Inc. (Mar. 21, 1986), 11th Dist. No. 1532, 1986 Ohio App. LEXIS 6042, at *3. The instant matter does not sound in tort but involves a breach of implied warranty pursuant to the Magnuson-Moss Warranty Act. The trial court did not err in failing to utilize appellant's proposed jury instruction regarding appellee's burden.
 {¶ 31} Appellant's first assignment of error lacks merit.
 {¶ 32} Appellant's second assignment of error alleges: *Page 11 
 {¶ 33} "The trial court erred in denying defendant-appellant's motion for directed verdict at the close of plaintiffs case and again at the close of defendant's case and further erred in denying defendant-appellant's motion for judgment notwithstanding the verdict on appellee's breach of implied warranty claim."
 {¶ 34} "[A] trial court may not grant a directed verdict unless the evidence, when construed in the light most favorable to the nonmoving party, leads reasonable minds to only one conclusion, and that conclusion is adverse to the nonmovant. Civ.R. 50(A), therefore, requires the trial court to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. Broz v.Winland (1994), 68 Ohio St.3d 521, 526; Keeton v. Telemedia Co. of S.Ohio (1994), 98 Ohio App.3d 405, 408. If there is sufficient credible evidence to permit reasonable minds to reach different conclusions on an essential issue, then the trial court must submit that issue to the jury. O'Day v. Webb (1972), 29 Ohio St.2d 215, paragraph four of the syllabus; * * *." Darroch v. Smyth, Cramer Co. (Apr. 3, 1998), 11th Dist. No. 96-L-212, 1998 Ohio App. LEXIS 1450, at *7-*8. "A motion for directed verdict presents a question of law that an appellate court reviews de novo." Celmer v. Rodgers, 11th Dist. No. 2004-T-0074,2005-Ohio-7054, at ¶ 27.
 {¶ 35} We also note a motion for judgment notwithstanding the verdict is reviewed under the same standard as that of a motion for a directed verdict. Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998),81 Ohio St.3d 677, 679; see, also, Blatnik v. Dennison,148 Ohio App.3d 494, 504, 2002-Ohio-1682. *Page 12 
 {¶ 36} Under appellee's theory of the case, he was required to demonstrate the vehicle was not "fit for the ordinary purposes for which such goods are used." R.C. 1302.27(B)(3).
 {¶ 37} We first point out that, motor vehicles, such as the truck at issue, are ordinarily used for transportation and similar utilitarian functions. Appellee testified that he was looking for a pick-up truck for "personal use back and forth to work, family trips, as well. I was looking for a generally reliable, trouble free transportation." Such are the ordinary uses for which motor vehicles, such as the truck at issue, are ordinarily used
 {¶ 38} During his direct examination appellee testified he purchased the vehicle on February 8, 2002 and he first noticed the leak on February 9, 2002. Specifically, appellee testified that after parking the vehicle for 12 hours in his garage, he noticed a "softball-size" puddle of oil under the vehicle. Commenting on the oil leaks, appellee stated:
 {¶ 39} "These leaks were anywhere from the origin of a filter adapter, a main seal, a valve cover, an intake manifold. This engine leaked oil from day two until ultimately on the 23rd of March, that it finally failed. That is the most major, and that is the reason why we're here. But in addition to that, I have had an alignment problem, which was due to a Pitman arm. A Pitman arm that was worn out. That was the result of the vehicle unable to be aligned. They had to replace the Pitman arm to get it to align properly. I had problems with the starter. The starter had failed after a short period of time. I had to replace the starter. I had problems with the seat, which we had mentioned, just a little while ago. I had issues with the air conditioner, the tires. I had *Page 13 
quite a few problems with it, but the engine leaking oil was obviously the most severe of the problems."
 {¶ 40} Appellee also put forth evidence that, notwithstanding appellant's "40 point inspection," the vehicle had various problems not only after he purchased it, but prior to the purchase as well.
 {¶ 41} Further, Joe Och, a master technician employed by appellant, testified on appellant's behalf. On cross-examination, Mr. Och testified that an oil leak in a vehicle is a sign something is wrong with that vehicle. He stated a vehicle is not designed to lose oil, let alone leak a softball-size puddle of oil within a twelve hour period. Mr. Och acknowledged that driving a vehicle with chronic oil leaks can cause damage to a vehicle over a long period of time and could lead to engine failure.
 {¶ 42} Appellee put forth evidence the vehicle leaked oil immediately after he bought it until the engine failed; he produced evidence that appellant sold him the vehicle with numerous defects, not the least of which was the chronic oil leak; finally, appellee presented evidence regarding the problems that can result, including a blown engine, from a continuous significant oil leak. We believe this is sufficient circumstantial evidence that the vehicle was unfit for the ordinary purposes for which vehicles are used. Given the benefit of all reasonable inferences that may be drawn from the evidence, we believe the trial court properly overruled appellant's motions for directed verdicts.
 {¶ 43} Although appellant moved the court for a judgment notwithstanding the verdict, the court instructed appellant to reduce the motion to writing. The record is devoid of any such motion. However, even had appellant properly complied with the *Page 14 
court's advisement, we believe the court would have acted proper in overruling the motion. The evidence, when viewed in a light most favorable to appellee, does not reasonably indicate appellant was entitled to a verdict.
 {¶ 44} Appellant's second assignment of error lacks merit.
 {¶ 45} Appellant's third assignment of error asserts:
 {¶ 46} "The trial court erred in sustaining the plaintiff's objection to defendant's opinion witness testimony concerning causation but nevertheless allowing plaintiff's own opinion testimony regarding valuation of damages to be presented to the jury."
 {¶ 47} A trial court has broad discretion in determining whether to admit or exclude evidence. Bernal v. Lindholm (1999),133 Ohio App.3d 163, 176. An evidentiary ruling will not be reversed save a clear and prejudicial abuse of discretion. Id.
 {¶ 48} In July of 2002, appellee sought discovery of any and all experts appellant intended to call to testify. Appellant responded "None at this time. Investigation continues." Appellant did not disclose their proposed experts until after the commencement of trial. Appellee objected to the admission of this testimony. In response, the court acknowledged appellant's failure to disclose violated the civil rules but determined, in the interest of justice, the witness could testify as to why, in his estimation, the oil leak did not cause the failure. Nevertheless, the court would not permit the witness to speculate as to what might have happened.
 {¶ 49} In order to clarify the nature of his witness' testimony, defense counsel proffered that he was calling the witness to testify about the "actual cause of the engine failure" pertaining to the change of an "intake manifold gasket" performed by Schultz *Page 15 
Service Center, a mechanic who did work on the vehicle prior to the engine failure. The court responded:
 {¶ 50} "I'm not going to allow the expert witness to testify concerning what might have occurred with the change of this manifold gasket. That is something that could have been developed and presented in an orderly fashion. Schultz could have been subpoenaed, although his testimony of course, I'm sure, would be that we did it properly, but there could have been investigation done. And not only am I allowing the expert in violation of the discovery rules for the purposes already stated on the record, but I think you get into that future speculation, you're just getting far afield because at this point, that expert can get on and say anything. There's no way on God's earth for Plaintiff to present rebuttal evidence.
 {¶ 51} "* * * If you want to put your expert on about what he knows concerning oil leaks as they related to what has been presented here, because the entire Plaintiff's case, based on the fact we had an oil leak, wasn't fixed, and the engine seized, therefore, the oil leak caused it. If you have the guy that can get on and say, `Couldn't have been an oil leak that caused the engine to blow,' then he's entitled to give that opinion. The Jury has to decide. But getting into this manifold business, I'm not going to permit that at this point."
 {¶ 52} A primary purpose of the Rules of Civil Procedure is to eliminate surprise. See, e.g., Vaught v. Cleveland ClinicFoundation, 98 Ohio St.3d 485, 2003-Ohio-2181, at ¶ 25. The tenor of the court's ruling indicates a concern that the testimony at issue could result in trial by ambush. Without time to properly investigate the expert's theory or engage an adequate rebuttal witness, the court believed appellant's case could be *Page 16 
greatly prejudiced. We do not disagree with the court's concerns. Because appellant failed to disclose the witness at a reasonable date prior to trial, we do not believe the trial court erred in its ruling.
 {¶ 53} Next, appellant asserts the trial court erred in allowing appellee an opportunity to opine regarding the amount of damages he suffered. We disagree.
 {¶ 54} Ohio courts have long acknowledged that the owner of personal property, because of such ownership, has adequate knowledge of its value to be qualified to give an opinion thereon which, while not conclusive, will provide some indicia of the actual value. Bishop v. East Ohio GasCo. (1944), 143 Ohio St. 541, 546. Appellee testified he had negotiated a cash price of the vehicle of $13,400 which was financed over 47 months for a total payment of $16,274.88. At trial, appellee provided his opinion regarding the difference in price between what he paid for the truck and what the truck was actually worth. Specifically, appellee testified on direct examination:
 {¶ 55} "Q. * * * Do you have an opinion as to how much less this truck was worth at the time you paid versus what you paid for it?
 {¶ 56} "* * *
 {¶ 57} "A. I do.
 {¶ 58} "Q. What is the basis of your opinion first, and secondly, what is that opinion?
 {¶ 59} "A. I base the opinion on the fact that I did research on this particular vehicle before I purchased it, and I used various sources, both Kelly Blue Book as well as the newspaper and Truck Trader, and I knew what a vehicle in that condition was worth at the time, which was a fair price for that vehicle. And I also know what I spent in *Page 17 
repairs. So, to me if you are going to buy a vehicle or a house or anything else for sale, if you are going to buy a house for $100,000, it needs no work, why would you by [sic] an $80,000 house and put $20,000 into it with all the efforts. With all of the repairs I had and the research I had done that the vehicle was worth somewhere around $9,500 in my estimation."
 {¶ 60} As counsel laid a proper foundation for appellee's opinion and Ohio permits the owner of personal property to testify as to its value, we do not believe the trial court abused its discretion in allowing the foregoing testimony.
 {¶ 61} Appellant's third assignment of error lacks merit.
 {¶ 62} Appellant's fourth assignment of error reads:
 {¶ 63} "The [trial] court erred in denying defendant-appellants [sic] motion for summary judgment."
 {¶ 64} Summary judgment is appropriate under Civ.R. 56(C) when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence in favor of the nonmoving party, that conclusion favors the moving party. Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 65} The moving party bears the initial burden of providing the trial court a basis for the motion and is required to identify portions of the record demonstrating the absence of material issues of fact pertaining to the non-moving party's claim. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. The burden then shifts to the non-moving party to set forth specific facts that would establish a genuine issue for trial. Id. *Page 18 
However, the non-moving party may not rest on bald allegations or denials contained in the pleadings; rather, he or she must submit evidentiary material sufficient to create a genuine dispute over material facts at issue. Id.
 {¶ 66} We review a trial court's decision to grant summary judgment de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 280, 290, 1996-Ohio-336. As such, summary judgment proceedings afford an appellate court the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36.
 {¶ 67} Under his final assignment of error, appellant asserts the vehicle at issue was merchantable because appellant "was able to use it for [his] intended purpose; transportation." Appellant contends that because the warranty was permissibly limited under Ohio law and the engine failure occurred outside that window, appellee's claim must fail. Moreover, appellant asserts "[i]n the event that plaintiff wanted to establish that the engine failure which took place outside the warranty period was a direct result of something that was brought to the attention of the defendant during the warranty period and not corrected, defendant must provide expert testimony to make such a causal connection."
 {¶ 68} Prior to trial, in his motion for summary judgment, appellee put forth evidence in the form of deposition testimony regarding the problems he experienced with the vehicle, repair documents and documentation demonstrating pre-sale mechanical problems. This evidence was sufficient to create a genuine issue of material fact regarding the issue of merchantability. Additionally, many of the problems detailed by appellee, not the least of which was the issue of the chronic oil leakage, was *Page 19 
brought to appellant's attention within the warranty period. Accordingly, there was a further issue of material fact as to whether the 30 day or 1,000 mile warranty would limit appellee's ability to recover.
 {¶ 69} Even if this court concluded that no genuine issue of material fact existed, the Supreme Court of Ohio has stated "[a]ny error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made."Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d 150, 156. Therefore, even if appellant's motion had merit when the trial court denied it, the denial was of no moment owing to the jury's verdict.
 {¶ 70} Appellant's final assignment of error lacks merit.
 {¶ 71} For the reasons set forth above, appellant's four assigned errors are overruled. The judgment of the Trumbull County Court of Common Pleas is hereby affirmed.
DIANE V. GRENDELL, J., COLLEEN MARY OTOOLE, J., concur.
[1] Some ancillary historical points should be noted. The trial court rendered its judgment entry on the jury verdict on March 11, 2005. Appellant filed his notice of appeal on March 22, 2005. On August 22, 2005, appellee filed a motion to dismiss the appeal for lack of a final appealable order (the issue of attorneys fees had not been finalized and thus the order was not final). On November 16, 2005, appellant moved this court to supplement the record on appeal pursuant to App.R. 9(E). Appellant's motion alleged that appellee's proposed jury instructions Nos. 18-21 were in fact read to the jury at trial, but were omitted from transcription. Appellant asserted the instructions "should appear on page 273 of the trial transcript[,]" but, for reasons unknown, were left out. However, on November 28, 2005, this court granted appellee's motion to dismiss and, in so doing, declared all pending motions moot. The record does not indicate appellant re-filed his App.R. 9(E) motion.
[2] While Ohio's Lemon Law applies only to new vehicles, the MMWA is not so limited. Hence, although the Lemon Law does not apply to used vehicles, a plaintiff may still assert a claim under the MMWA relating to the breach of an implied warranty. See Lawhorn, supra, at 156 (noting that, for purposes of the MMWA, "implied warranties" are those implied warranties arising under state law and "[i]n Ohio, implied warranties of merchantability and fitness for a particular purpose are imputed in the sale of consumer goods. R.C. 1302.27 through 1302.29."
[3] In essence, the trial court's charge limited appellant's ability to recover by requiring him to actually prove the defect and demonstrate it was covered by the warranty which is not necessary underMcGuire. In this respect, any error would inure to appellant's benefit and is therefore harmless in the context of this appeal. *Page 1