DECISION AND JUDGMENT ENTRY
{¶ 1} Katherine Hine appeals from two Ross County Common Pleas Court judgments: (1) summary judgment granted in favor of Central Boiler, Inc.; and (2) partial summary judgment granted in favor of William Byler, dba Dutch Kraft Woodworks. Hine bought an older home with a gas boiler that heated the water in the heating system. Hine purchased a new wood boiler, manufactured by Central Boiler and sold by Byler (a Central Boiler dealer), to replace the gas boiler. Byler installed the wood-burning boiler. However, Hine experienced heating problems after the installation. She filed a *Page 2 
complaint against Central Boiler and Byler asserting six causes of action, including breach of warranties.
 {¶ 2} On appeal, Hine contends that the trial court erred when it found that the new wood boiler was not defective. Because Hine presented no evidence showing that the wood boiler was defective in the context of Central Boiler's express written warranty, we disagree. Hine next contends that the trial court erred when it found that Central Boiler did not breach an express warranty created by its advertising. Because Hine did not produce evidence showing that the new boiler failed to comport to the warranty at the time the new boiler left the control of Central Boiler, we disagree.
 {¶ 3} Hine further contends that the trial court failed to apply the doctrine of res ipsa loquitur; erred by not finding that Byler was an agent of Central Boiler; and erred when it considered untimely filed motions for summary judgment. Because Hine did not preserve these arguments for appeal by presenting them in the trial court, she waived them, and thus, we do not address them. Accordingly, we overrule all of Hine's assignments of error and affirm the judgment of the trial court.
 I. {¶ 4} Hine bought an older home with a water heating system. The system inside her home included a reservoir of water with a pump that moved the water to the various radiators. The source of the heat for the reservoir of water was a gas boiler. Hine decided to keep the existing water heating system but change the source of the heat. She looked for a non-gas boiler that could be installed outside her home. *Page 3 
 {¶ 5} Hine purchased a wood-burning boiler manufactured by Central Boiler, a 4436 model. She purchased the boiler from Byler, a Central Boiler dealer. The new boiler had an express written warranty, which provided that Central Boiler "warrants to the original owner that the Central Boiler Classic* CL 4436 * * *, Serial No. 25225 to be free from defects in the workmanship of all parts of the furnace manufactured by Central Boiler."
 {¶ 6} Hine purchased that particular model based on a representation in a Central Boiler brochure that stated, "[o]lder home with higher heat loss, 12 to 24 hour burn time at 20 to 30 below zero.*" The asterisk refers to a note, which states that "[t]hese are burn times and heating examples from working applications relayed to Central Boiler from Classic furnace owners."
 {¶ 7} Hine disconnected the gas boiler inside the home and had Byler install the new wood boiler outside the home. Byler installed the new boiler, which came with a pump, into the pre-existing inside water heating system. That is, the pre-existing reservoir of water inside the home remained the same, along with the pre-existing inside pump.
 {¶ 8} After Byler installed the new boiler, Hine began experiencing problems heating her home and getting the wood-fired boiler to burn for any extended length of time. In fact, she could not get the wood boiler to burn for anywhere close to the length of time represented in the Central Boiler brochure; the longest she ever got the new boiler to burn was possibly eight hours. *Page 4 
 {¶ 9} Hine then filed this action against Central Boiler and Byler d/b/a Dutch Kraft Woodworks asserting six causes of action: (1) breach of implied warranties, i.e., the implied warranties of fitness for a particular purpose and merchantability; (2) breach of contract; (3) negligence; (4) fraudulent misrepresentation; (5) Ohio Consumer Sales Practices Act ("CSPA") violations; (6) and violations of the Magnuson-Moss Warranty Act.
 {¶ 10} During litigation, Hine requested her expert witness, Mark Wright, to inspect her water heating system. Wright testified at his deposition that nothing was wrong with the new boiler. Instead, Wright concluded that Hine's problems were the result of the improper installation of the new wood boiler to the pre-existing water heating system. According to Wright, the new boiler's smaller pump was working against the pre-existing larger pump located inside the home. Wright opined that the larger pump flushed the heated water created by the new boiler out of the home. Wright referred to this as "dead-heading." Wright concluded that it would cost $500 to fix this problem.
 {¶ 11} Byler testified that, following his first inspection, he determined that the problem was with improper water circulation caused by the existing system, not the new boiler. Byler concluded that the new boiler was not defective.
 {¶ 12} Central Boiler and Byler filed separate motions for summary judgment. Hine filed a response with exhibits. However, the court struck Hine's response except those statements supported by the deposition transcripts of Hine, Byler and Wright.
 {¶ 13} The trial court granted summary judgment in favor of Central Boiler on all claims and granted partial summary judgment in favor of Byler on Hine's claim of *Page 5 
fraudulent misrepresentation. The trial court made "the express determination that there is no just cause for delay."
 {¶ 14} Hine now appeals and asserts the following assignments of error: I. "THE TRIAL COURT ERRONEOUSLY FOUND THAT THERE WERE NO GENUINE ISSUES AS TO MATERIAL FACT AS TO APPELLEES' CLAIMS THAT THE PRODUCT PURCHASED WAS `NOT DEFECTIVE.'" II. "THE TRIAL COURT ERRONEOUSLY EVALUATED THE EXISTING EVIDENCE OF NEGLIGENCE WITHOUT RECOGNIZING THE APPLICABILITY OF THE DOCTRINE OF RES ISPA LOQUITOR." III. "THE TRIAL COURT ERRONEOUSLY FAILED TO RECOGNIZE THAT AN EXPRESS WARRANTY CREATED BY MANUFACTURER IN ITS ADVERTISING LITERATURE CREATED CONTRACTUALLY BASED OBLIGATIONS AND DUTIES." IV. "THE TRIAL COURT ERRONEOUSLY FOUND THAT THE CONSUMER PRODUCT PURCHASED BY PLAINTIFF WAS NOT `DEFECTIVE' WHEN IT ADMITTEDLY LACKED THE PERFORMANCE CHARACTERISTICS REPRESENTED IN MANUFACTURER'S ADVERTISING LITERATURE." V. "THE ACTS OF THE DEALER WERE LEGALLY ATTRIBUTABLE TO THE MANUFACTURER AS ITS PRINCIPAL OR APPARENT PRINCIPLE." VI. "THE TRIAL COURT ERRONEOUSLY INCONSISTENTLY REFUSED TO HOLD THAT THERE WERE GENUINE ISSUES AS TO WHETHER MANUFACTURER HAD COMMITTED A DECEPTIVE TRADE PRACTICE EVEN AFTER IT CORRECTLY RULED THAT THERE WERE GENUINE DECEPTIVE TRADE PRACTICE ISSUES AS TO DEALER, WHO ARGUABLY ACTED ON BEHALF OF MANUFACTURER." VII. "THE TRIAL *Page 6 
COURT ERRONEOUSLY INCONSISTENTLY REFUSED TO HOLD THAT THERE WERE GENUINE ISSUES AS TO WHETHER MANUFACTURER HAD VIOLATED THE MAGNUSON-MOSS ACT DUE TO MANUFACTURER'S OWN ACTS, AS WELL AS DUE TO THE ACTIONS OF THE DEALER, WHO ARGUABLY ACTED ON BEHALF OF MANUFACTURER." And, VIII. "THE TRIAL COURT ERRONEOUSLY CONSIDERED DEFENDANTS' SUMMARY JUDGMENT MOTIONS FILED WITHOUT REQUESTS FOR LEAVE AND AFTER ALL ISSUES HAD BEEN SCHEDULED FOR TRIAL ON THE MERITS."
 II. {¶ 15} Hine contends that the trial court erred when it granted Central Boiler's motion for summary judgment and partially granted Byler's motion for summary judgment. Our review is de novo. See, e.g.,Comer v. Risko, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 8.
 {¶ 16} Summary judgment is appropriate only when it has been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(A). SeeBostic v. Connor (1988), 37 Ohio St.3d 144, 146; Morehead v. Conley
(1991), 75 Ohio App.3d 409, 411. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. Doe v. First United MethodistChurch (1994), 68 Ohio St.3d 531, 535.
 {¶ 17} The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v.Burt (1996), *Page 7 75 Ohio St.3d 280, 294, citing Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). See, also, Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108,111; Dresher, at 294-295.
 {¶ 18} In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be drawn from it to determine if the opposing party can possibly prevail. Morehead, 75 Ohio App.3d at 411-412. "Accordingly, we afford no deference to the trial court's decision in answering that legal question." Id. See, also, Schwartz v. Bank-One,Portsmouth, N.A. (1992), 84 Ohio App.3d 806, 809.
 {¶ 19} In her first, third, fourth, sixth, and seventh assignments of error, Hine contends in essence that the trial court erred in finding that Central Boiler did not breach certain warranties. For the reasons that follow, we disagree.
 A. {¶ 20} Hine contends in her first and fourth assignments of error that the trial court erred when it found that the new boiler was not defective. She asserts that the new boiler was defective because it did not burn as long as represented in Central Boiler's advertising literature.
 {¶ 21} The parties disagree on what the word "defective" means. However, the trial court used the word "defective" in the context of the express written Central Boiler *Page 8 
warranty. It provides that Central Boiler "warrants to the original owner that the Central Boiler Classic* CL 4436 * * *, Serial No.25225 to be free from defects in the workmanship of all parts of the furnace manufactured by Central Boiler." In other words, Central Boiler warranted the parts of the furnace it manufactured insofar as those parts did not work. Therefore, Hine had to demonstrate that one or more of the parts of the wood boiler did not work properly.
 {¶ 22} Here, based on the evidence submitted to the court, Central Boiler and Byler met their burden of showing that no genuine issue of material fact exists as whether one of the parts of the new boiler was defective. Hine, in turn, failed to produce evidence contrary to this conclusion.
 {¶ 23} Hine produced evidence that demonstrated that even the longest "burn time" of her new boiler, i.e., 8 hours, did not comport with the stated "12 to 24 hour burn time" in Central Boiler's advertising brochure. However, Hine did not show that this problem existed at the time the new boiler left Central Boiler's control. See, e.g.,McDonald v. Ford Motor Co. (1975), 42 Ohio St.2d 8, 10. Stated differently, Hine did not produce any evidence that the new boiler could not reach the indicated burn times once properly installed.
 {¶ 24} Hine's own expert witness, Mark Wright, testified that he could find no defect in the new boiler. Instead, according to Wright, the main issue causing the problem was the fact that the new boiler was not properly attached to the existing water heating system. This testimony does not demonstrate a defect in workmanship of the parts of the new boiler. Further, Byler testified that, following his first inspection, he determined *Page 9 
that the problem was with improper water circulation caused by the existing system, not the new boiler. Byler concluded that the new boiler was not defective.
 {¶ 25} Therefore, Hine failed to demonstrate that one or more of the parts of the wood boiler did not work properly when it left the control of Central Boiler. Consequently, we find that the trial court did not err when it found that the new boiler was not defective in the context of the express written warranty.
 B. {¶ 26} Hine further contends in her third, sixth, and seventh assignments of error that the trial court committed error by not finding that Central Boiler's advertising literature created certain legal obligations and duties. In essence, Hine asserts that Central Boiler breached an express warranty created by its advertising literature, i.e., that the boiler would heat her home and have a twelve to twenty-four hour burn time in temperatures twenty to thirty degrees below zero, and that such a breach amounted not only to a violation of the warranty, but also a violation of the CSPA and the Magnuson-Moss Warranty Act.[1]
 {¶ 27} Pursuant to R.C. 1302.26(A)(1), a seller's "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Further, a seller's "description of the goods which is made part of the basis *Page 10 
of the bargain creates an express warranty that the goods shall conform to the description." R.C. 1302.26(A)(2). "Under Ohio law, the party asserting a breach of warranty claim carries the burden of proving that a defect exists in the product sold by the manufacturer, and that the defect existed at the time the product left the manufacturer's control."Conservation Load Switch, Inc. v. Ohio University, Ct. of Cl. No. 2002-06031, 2004-Ohio-1472, ¶ 14, citing McDonald, supra.
 {¶ 28} Here, assuming that we agree with Hine that Central Boiler's advertising did create an express warranty, i.e., that the boiler would heat her home and have a twelve to twenty-four hour burn time in temperatures twenty to thirty degrees below zero, Hine failed to demonstrate that the new boiler's burn times would not comport with the warranty if properly installed.
 {¶ 29} Therefore, the undisputed evidence demonstrates that the problem was caused by improper installation, not a defect in the new boiler that existed at the time it left Central Boiler's control. Consequently, we find that the trial court did not err when it failed to find that Central Boiler violated an express warranty created by its advertising.
 C. {¶ 30} Therefore, in construing the evidence and all inferences therefrom in Hine's favor, we find that there is no genuine issue as to any material fact in any of the causes of action in issue; that Central Boiler is entitled to judgment as a matter of law, and that Byler is entitled to partial judgment as a matter of law; and that reasonable minds can come to only one conclusion, and that conclusion is adverse to Hine. *Page 11 
 {¶ 31} Accordingly, we overrule Hine's first, third, fourth, sixth, and seventh assignments of error.
 III. {¶ 32} Hine contends in her second, fifth, and eighth assignments of error that the trial court erred when it failed to apply the doctrine of res ipsa loquitur; erred by not finding that Byler was an agent of Central Boiler; and erred when it considered untimely filed motions for summary judgment. Because Hine did not preserve these arguments for appeal by presenting them in the trial court, she waived them, and thus, we do not address them. See, e.g., McKinley v. Ohio Bur. of Workers'Comp., 170 Ohio App.3d 161, 2006-Ohio-5271, ¶ 38, citing Stores RealtyCo. v. Cleveland (1975), 41 Ohio St.2d 41.
 {¶ 33} Accordingly, we overrule Hine's second, fifth, and eighth assignments of error.
 IV. {¶ 34} In conclusion, we overrule all eight of Hine's assignments of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 12 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED, and Appellant pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. and McFarland, J.: Concur in Judgment Only.
[1] As noted by other Ohio courts, "[t]he Magnuson-Moss Warranty Act * * * `governs consumer product warranties, both written and implied."Urso v. Compact Cars, Inc., Trumbull App. No. 2006-T-0062,2007-Ohio-4375, ¶ 18. The general purpose behind the Magnuson-Moss Warranty Act "is to require warrantors to `disclose the terms and conditions of their written warranties relating to certain consumer goods * * * so that consumers can make informed choices regarding the purchase of such goods." Id., citing Lawhorn v. Joseph Toyota, Inc.
(2001), 141 Ohio App.3d 153. Pursuant to 15 U.S.C. 2310(D)(1), "a consumer who is damaged by the failure of a * * * warrantor * * * to comply with any obligation under this chapter, or under a written warranty * * * may bring suit for damages and other legal and equitable relief * * *." *Page 1